IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT SMITH,

    Plaintiff,

v.                                                Civ. No. 20-1321 KK/JFR

DENIS MCDONOUGH, Secretary of
U.S. Department of Veteran Affairs,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss First Amended Complaint for Failure to State a Claim and Memorandum in Support (Doc. 9) ("Motion to Dismiss"), filed April 19, 2021, and Plaintiff's Opposed Motion for Leave to Amend Complaint (Doc. 22) ("Motion to Amend"), filed May 13, 2021. The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, FINDS that: (1) Defendant's Motion to Dismiss is well taken and should be GRANTED; (2) Plaintiff's Motion to Amend is not well taken and should be DENIED; and, (3) Plaintiff's Amended Complaint for Employment Discrimination on the Basis of Race, Color, Age and Retaliation (Doc. 8) ("Amended Complaint") should be dismissed without prejudice to Plaintiff's ability to seek leave to file a revised second amended complaint that complies with the requirements described below.[1]

---

[1] For the first time in his reply in support of his Motion to Dismiss, Defendant argues that the Court should dismiss Plaintiff's Amended Complaint "with prejudice." (Doc. 34 at 1, 7.) The Court deems this argument waived. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief.").

I. **Factual Allegations and Procedural History**

Plaintiff Robert Smith filed his original complaint in this matter on December 18, 2020. (Doc. 2.) On April 5, 2021, he filed his Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1). (Doc. 8.) In his Amended Complaint, Plaintiff alleges the following:

- Plaintiff is a 63-year-old, Black African American who began working for the federal government in 2002. (*Id.* at 2.) He is presently employed as an "IT Supervisor" with the United States Department of Veterans Affairs ("VA"). (*Id.*) Defendant Denis McDonough is the VA Secretary.[2] (*Id.*) "Plaintiff has exhausted his administrative remedies and received his Notice of Right to Sue." (*Id.*)

- In March 2019, Plaintiff filed an "EEO complaint." (*Id.*) "The EEO investigation concluded" in November 2019. (*Id.*)

- "Beginning in December of 2019, [Plaintiff] has been subjected to a hostile work environment" consisting of: (1) "being criticized for performance"; (2) "being subjected to a heavy work load compared to other IT personnel"; (3) "being downgraded in annual performance evaluation"; (4) "being blamed for failed projects that Plaintiff is not assigned"; (5) "being left out of important daily meetings or emails making it difficult to perform his duties"; (6) "being demeaned and humiliated in front of peers"; (7) "being harassed about not closing tickets by his supervisor when his similarly situated Hispanic co-worker was not harassed by the supervisor for a more egregious occurrence"; and, (8)

---

[2] Defendant McDonough has been automatically substituted for former VA Secretary Robert Wilkie pursuant to Federal Rule of Civil Procedure 25(d).

"being prevented from receiving training by his supervisor." (*Id.* at 2-3.) As a result, Plaintiff has lost wages and benefits and has experienced emotional distress. (*Id.* at 3.)

Relying on these allegations, Plaintiff claims Defendant has discriminated against him on the bases of race and color in violation of Title VII and on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"). (*Id.* at 3-4.) Plaintiff also claims Defendant has retaliated against him "for opposing discriminatory practices in the workplace" in violation of Title VII. (*Id.* at 5.) Plaintiff seeks compensatory damages and attorney fees and costs. (*Id.* at 5-6.)

Defendant filed his Motion to Dismiss on April 19, 2021. (Doc. 9.) In it, he asks the Court to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.*) On May 13, 2021, Plaintiff filed his Motion to Amend, seeking leave to file a proposed Second Amended Complaint for Employment Discrimination on the Basis of Race, Color, Age and Retaliation ("proposed Second Amended Complaint").[3] (Doc. 22.) Plaintiff seeks to file the proposed Second Amended Complaint to address the arguments in Defendant's Motion to Dismiss "that Plaintiff did not provide specific information of comparative evidence and that his protected activity was made in good faith." (*Id.* at 1.)

The proposed Second Amended Complaint includes the following additions to the Amended Complaint:

- In his March 2019 EEO complaint, Plaintiff alleged that "his non-African American supervisor was subjecting him to a hostile work environment on the basis of race and color." (*Id.* at 5.) The conduct of which he complained consisted of: (1) "setting him up

---

[3] The Motion to Amend appears to be Plaintiff's third attempt to file the proposed Second Amended Complaint. Plaintiff first filed this document on May 3, 2021 without Defendant's consent or the Court's leave in violation of Federal Rule of Civil Procedure 15 and withdrew it later the same day. (Docs. 15, 16.) Then, on May 7, 2021, Plaintiff filed an opposed motion to amend that the Court denied without prejudice for failure to comply with Local Civil Rule 15.1. (Docs. 18, 21.)

3

- for failure"; (2) "assigning [him] meaningless work, requiring him to approve an employee's overtime although the employee did not work overtime"; (3) "denying [him] the acting manager position"; (4) "telling [his] employees that they should ignore him"; and, (5) "calling him derogatory names." (*Id.*)

- "Again in December of 2019, [Plaintiff] has been subjected to a hostile work environment" consisting of: (1) "being criticized for his performance"; (2) "being subjected to a heavy work load compared to other *non-African American*[4] IT personnel"; (3) "being downgraded in annual performance evaluation"; (4) "being blamed for failed projects that *non-African Americans were assigned*"; (5) "being left out of important daily meetings or emails making it difficult to perform his duties"; (6) "being demeaned and humiliated *by his non-African American supervisor* in front of peers"; (7) "being harassed about not closing tickets by his *non-African American* supervisor when his similarly situated Hispanic co-worker were [sic] not harassed by the supervisor for a more egregious occurrences [sic]"; (8) "being prevented from receiving training by his *non-African American* supervisor"; and, (9) "*Plaintiff's non-African American supervisor revoking Plaintiff's supervisor duties*." (*Id.* at 6 (italics added).)

Defendant filed a response in opposition to Plaintiff's Motion to Amend on May 13, 2021, and Plaintiff filed a reply in support of it on June 4, 2021. (Docs. 23, 27.) Plaintiff, in turn, filed a response in opposition to Defendant's Motion to Dismiss on July 20, 2021, and Defendant filed a reply in support of it on August 2, 2021. (Docs. 33, 34.) Thus, both parties' motions are now fully briefed and ready for decision.

---

[4] Italics in this paragraph highlight the substantive modifications to the Amended Complaint included in the proposed Second Amended Complaint.

## II. Analysis

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020). If the factual allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotation marks omitted). "[T]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.*

In determining whether a complaint states a plausible claim to relief, courts "accept as true all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotation marks omitted).

Federal Rule of Civil Procedure 15 provides that, absent circumstances not applicable here, "a party may amend its pleading only with the opposing party's written consent or the court's

leave."[5] Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is within the trial court's discretion. *Bradley v. Val-Mejias*, 379 F.3d 892, 900-01 (10th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The court should freely give leave when justice so requires," and should be mindful that Rule 15 is intended to provide litigants with "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." Fed. R. Civ. P. 15(a)(2); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Nevertheless, courts may deny leave to amend on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005).

A pleading is futile if, "as amended, [it] would be subject to dismissal." *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 580 (D.N.M. 2010) (quoting *Bradley*, 379 F.3d at 901). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999); *see also Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251 (N.D. Okla. 2011) ("[T]o determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Rule 12(b)(6).") (brackets omitted). "The burden of showing futility rests with the defendant[] who assert[s] this ground in opposing the plaintiff's [motion for] leave to amend." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 953 F. Supp. 2d 1176, 1181 (D. Kan. 2013), *aff'd*, 810 F.3d 1161 (10th Cir. 2016). The Court will consider the parties' motions in light of the foregoing standards.

---

[5] A party may amend its pleading "once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Here, as previously noted, Plaintiff has already amended his complaint once as a matter of course and thus may not do so again.

> A.  **Plaintiff's Amended Complaint and proposed Second Amended Complaint fail to state a plausible claim of race or color discrimination under Title VII.**

In his Motion to Dismiss and his response to Plaintiff's Motion to Amend, Defendant first argues that Plaintiff has failed to state a plausible claim of race or color discrimination under Title VII in his Amended Complaint or his proposed Second Amended Complaint. (Doc. 9 at 4-7; Doc. 23 at 9-12.) Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race [or] color[.]" 42 U.S.C. § 2000e-2(a)(1) (emphasis added). "To prevail on a Title VII discrimination claim, the plaintiff bears the ultimate burden of proving intentional discrimination by the employer." *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019).

A plaintiff can prove intentional discrimination using direct or circumstantial evidence. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). "Direct evidence demonstrates on its face that the employment [decision] was discriminatory," while "[c]ircumstantial evidence permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination that discrimination, in fact, has occurred." *Id.* When a plaintiff presents only circumstantial evidence of discrimination, courts analyze the claim using "the *McDonnell Douglas* burden-shifting framework," under which "the plaintiff has the initial burden of establishing a prima facie case of discrimination." *Singh*, 936 F.3d at 1037. "While the [Rule] 12(b)(6) standard does not require that [a p]laintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether [the p]laintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192; *accord Bobelu-Boone v. Wilkie*, No. CIV. 20-00688 WJ-KK, 2021 WL 1060771, at *9 (D.N.M. Mar. 18, 2021) ("While [a p]laintiff is not required to

7

prove racial animus in [his] complaint, [he] must still set out facts making it plausible to believe that [the d]efendant's acts were racially motivated.").

"The specific test for a prima facie case may vary with the context." *Singh*, 936 F.3d at 1037. Broadly, however, to establish a prima facie disparate treatment claim, a plaintiff must show that: (1) the "plaintiff belongs to a protected class"; (2) "he suffered an adverse employment action"; and, (3) "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). To establish a prima facie hostile work environment claim, in turn, a plaintiff must show "membership in a protected group, unwelcome harassment based on the protected characteristic, and due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Glapion v. Castro*, 646 F. App'x 668, 671 (10th Cir. 2016) (quotation marks omitted). Thus, for both types of claims, the plaintiff must show circumstances giving rise to an inference of discriminatory motivation.

One way a plaintiff can establish discriminatory motivation is to show that he "was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192; *see also Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) ("Courts have enumerated a variety of circumstances that can give rise to an inference of discriminatory motive, including . . . preferential treatment given to employees outside the protected class[.]"). However, "[a] plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant—i.e., that the employees were similarly situated." *Hysten*, 296 F.3d at 1182. Thus, to plausibly allege discriminatory animus based on differential treatment, a complaint must "allege some set of facts

that taken together plausibly suggest differential treatment of similarly situated employees." *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014).

The Tenth Circuit has observed that, in the employment discrimination context, "there are certain details the [p]laintiff should know and could properly plead to satisfy the plausibility requirement" described in *Iqbal*, 556 U.S. at 678. *Khalik*, 671 F.3d at 1194. Such details include who engaged in the alleged discriminatory conduct at issue, when and in what context the conduct occurred, and why the plaintiff believes the conduct "was connected with discriminatory animus[.]" *Id.* In addition, the Tenth Circuit has specifically identified certain kinds of allegations as conclusory and thus, without more, insufficient to state a plausible claim of discrimination. These include that the plaintiff "was targeted because of [his] race" and that other employees who received more favorable treatment were "similarly situated." *Khalik*, 671 F.3d at 1193; *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (rejecting allegation that plaintiff was "similarly situated" to "other, non-reprimanded physicians" as "too conclusory"); *see also Hwang*, 753 F.3d at 1164 (rejecting allegation that plaintiff was "similarly situated to employees who get sabbaticals" as "just a legal conclusion—and a legal conclusion is never enough").

According to Defendant, Plaintiff has not plausibly alleged that he suffered any adverse employment actions due to his race or color. (Doc. 9 at 4-7; Doc. 23 at 9-12.) The Court agrees. In his Amended Complaint, Plaintiff includes virtually no factual allegations tending to show that the conduct of which he complains "occurred under circumstances giving rise to an inference of discrimination." *Hysten*, 296 F.3d at 1181. He does attempt to allege two instances of differential treatment, *i.e.*, that: (1) he was assigned "a heavy work load compared to other IT personnel"; and, (2) his supervisor "harassed" him "about not closing tickets" but did not harass "his similarly situated Hispanic co-worker . . . for a more egregious occurrence." (Doc. 8 at 2-3.) However,

9

Plaintiff makes no attempt to allege that the "other IT personnel" assigned lighter workloads were similarly situated to him. (*Id.*) And, he includes no factual details to support the conclusory allegations that his "Hispanic co-worker" was "similarly situated" and engaged in "more egregious" conduct. (*Id.*) Instead, these allegations leave wholly open the possibility that, for example, the employees to whom Plaintiff compares himself held different positions or had different job duties that accounted for the more favorable treatment they received. Thus, neither of Plaintiff's attempts to allege differential treatment in the Amended Complaint plausibly support an inference of racially discriminatory motivation. *Bekkem*, 915 F.3d at 1275; *Hwang*, 753 F.3d at 1164.

Nor do any of the remaining factual allegations in the Amended Complaint support such an inference. Rather, in these allegations, Plaintiff simply lists various kinds of facially race-neutral mistreatment he claims to have experienced at work. (*See* Doc. 8 at 2-3.) Based on these allegations, Plaintiff's supervisor "could just as easily have" subjected him to the complained-of conduct "because he did a poor job or even because he is not a likeable sort of guy," neither of which "constitute instances of discrimination." *Zunie v. Azar*, No. 18-CV-1219 WJ/SCY, 2019 WL 6728754, at *3 (D.N.M. Dec. 11, 2019), *appeal dismissed*, No. 20-2003, 2020 WL 3971324 (10th Cir. Mar. 30, 2020). As such, these allegations are also inadequate to "mak[e] it plausible to believe that Defendant's acts were racially motivated." *Bobelu-Boone*, 2021 WL 1060771 at *9; *see Khalik*, 671 F.3d at 1191 (claims are not plausible where factual allegations "are so general that they encompass a wide swath of conduct, much of it innocent").

In his proposed Second Amended Complaint, Plaintiff adds factual allegations that appear intended to support an inference of discriminatory motivation. (Doc. 22 at 6.) However, these additional allegations are still "insufficient to indicate that racial . . . discrimination was the

plausible, rather than just the possible reason" for the conduct of which Plaintiff complains. *Bekkem*, 915 F.3d at 1275 (quotation marks omitted). Initially, "[a]lthough the race . . . of the individual(s) responsible for [an employment] decision is certainly relevant, it is insufficient to establish a prima facie case of discrimination without more." *Iadimarco v. Runyon*, 190 F.3d 151, 156 (3d Cir. 1999); *see also Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) ("Mere differences in race do not, by themselves, support an inference of racial animus."). Thus, Plaintiff's proposed amendments describing his supervisor as non-African American do not, by themselves, support an inference of discrimination.

Plaintiff's new allegation that he was assigned a heavier workload than "other non-African American IT personnel" is also unavailing. (Doc. 22 at 6.) Again, Plaintiff fails to include even a conclusory assertion that the personnel in question were similarly situated to him, much less provide any factual details to support such an assertion. (*See id.*) This allegation therefore "encompass[es] a wide swath of conduct, much of it innocent," *Khalik*, 671 F.3d at 1191, and fails to support an inference of discriminatory motivation. *Bekkem*, 915 F.3d at 1275; *Hwang*, 753 F.3d at 1164.

Likewise, the new allegation that Plaintiff was "blamed for failed projects that non-African Americans were assigned" fails to "plausibly suggest differential treatment of similarly situated employees." (Doc. 22 at 6); *Hwang*, 753 F.3d at 1164. This allegation does at least imply some commonality between Plaintiff and the non-African Americans who received more favorable treatment, *i.e.*, they were both associated in some way with the same projects. Nevertheless, even viewed in the light most favorable to Plaintiff, the allegation still leaves open the possibility that the non-African Americans in question had different positions or job duties that accounted for the

11

more favorable treatment they received. As such, this allegation also fails to support an inference of racially discriminatory animus. *Bekkem*, 915 F.3d at 1275; *Hwang*, 753 F.3d at 1164.

The Court is aware that "facially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1224 (10th Cir. 2015) (brackets omitted). In his Amended and proposed Second Amended Complaints, Plaintiff alleges a hostile work environment and could therefore "use a substantial amount of arguably race-neutral harassment to bolster a smaller amount of race-based conduct." (Doc. 8 at 2-3; Doc. 22 at 6); *Lounds*, 812 F.3d at 1224 n.6 (brackets omitted). However, as discussed above, Plaintiff has not plausibly alleged any race-based conduct in his pleadings. Rather, "noticeably missing here is any link between the supervisor's conduct and Plaintiff's [race]—without which there can be no hostile environment claim." *Zunie*, 2019 WL 6728754 at *3.

Moreover, even if Plaintiff had plausibly alleged racial animus, his attempts to allege actionable disparate treatment would fail for another reason. As noted above, one of the elements a plaintiff must show to establish a prima facie case of discrimination based on disparate treatment is that he "suffered an adverse employment action." *Khalik*, 671 F.3d at 1192.

> Conduct rises to the level of 'adverse employment action' when it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quotation marks omitted). "[A]n adverse employment action is not limited to such acts[,]" and courts are to "liberally interpret" this element and "take a case-by-case approach, examining the unique factors relevant to the situation at hand." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quotation

marks omitted). "Actions presenting nothing beyond a mere inconvenience or alteration of responsibilities, however, do not constitute adverse employment action." *Stinnett*, 337 F.3d at 1217 (quotation marks omitted).

"[D]isciplinary action on the part of an employer can constitute adverse employment action." *Dick*, 397 F.3d at 1270. However, the Tenth Circuit has held that a "single write-up [was] not an adverse employment action" where it had no "bearing on [the plaintiff's] likelihood of being fired." *Id.* Similarly, the Tenth Circuit "do[es] not define 'adverse employment action' as encompassing every action taken by a plaintiff's employer that may affect the plaintiff's future employment opportunities." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (quotation marks and ellipses omitted). Rather, courts must "exclude from that definition those acts that merely have a *de minimis* impact upon an employee's future job opportunities." *Id.* In addition, "[w]hile an increased workload might constitute an adverse employment action in some circumstances," a "generalized" claim on this point is insufficient. *Jones v. Barnhart*, 349 F.3d 1260, 1269–70 (10th Cir. 2003).

Here, Plaintiff's three attempts to claim disparate treatment fail because none of them plausibly allege an adverse employment action. Plaintiff's assertions that he was "harassed" about not closing tickets and "blamed" for others' failed projects are simply too vague to satisfy this element. (Doc. 8 at 2-3; Doc. 22 at 6.) The terms "harass" and "blame" easily encompass a wide swath of acts that have no "bearing on [Plaintiff's] likelihood of being fired," *Dick*, 397 F.3d at 1270, and "a *de minimis* impact" on Plaintiff's "future job opportunities." *Hillig*, 381 F.3d at 1033. Both terms are at least as likely to refer to casual verbal censure as something more consequential, such as a formal reprimand or other disciplinary action. Likewise, Plaintiff's bald claim that his workload was "heavy … compared to other non-African American IT personnel" is far too

13

generalized to plausibly allege circumstances "beyond a mere inconvenience or alteration of responsibilities." (Doc. 22 at 6); *Stinnett*, 337 F.3d at 1217 (quotation marks omitted).

In sum, as Defendant contends, in neither his Amended Complaint nor his proposed Second Amended Complaint has Plaintiff plausibly alleged that the conduct of which he complains was due to his race or color. In addition, Plaintiff has not plausibly alleged that he suffered an adverse employment action in any of his attempts to state a disparate treatment claim. For these reasons, Plaintiff has failed to "nudge[]" his claims for race and color discrimination "across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191. The Court will therefore dismiss the race and color discrimination claims in Plaintiff's Amended Complaint for failure to state a claim, and will deny Plaintiff leave to assert the race and color discrimination claims in his proposed Second Amended Complaint on the basis of futility.[6]

### B. Plaintiff's Amended Complaint and proposed Second Amended Complaint fail to state a plausible claim of age discrimination under the ADEA.

The inadequacy of Plaintiff's age discrimination claims, in both the Amended Complaint and the proposed Second Amended Complaint, is so patent that Defendant addresses it in footnotes and Plaintiff does not address it at all. (Doc. 9 at 5 n.3; Doc. 23 at 10 n.4; *see generally* Docs. 22, 27, 33.) The ADEA "prohibits employers from 'discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age.'" *Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (quoting 29

---

[6] Defendant also argues that Plaintiff has failed to allege sufficiently severe and pervasive mistreatment to state a plausible hostile work environment claim. (Doc. 9 at 6.) The Court need not address this argument because it grants Defendant's request for dismissal of this claim and denies Plaintiff's request for leave to amend it on other grounds, *i.e.*, for failure to plausibly allege discriminatory animus. Notably, however, Plaintiff has alleged that the mistreatment to which he was subjected caused him not only emotional distress, but also "lost wages and benefits." (Doc. 8 at 3; Doc. 22 at 6.) Thus, Defendant's argument on this point does not appear to be compelling. *See, e.g., Asebedo v. Kansas State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (hostile work environment must be "sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment").

U.S.C. § 623(a)(1)) (emphasis in original) (brackets omitted). Neither the Amended Complaint nor the proposed Second Amended Complaint includes any allegation that would tend to support the inference that Plaintiff was mistreated because of his age. Plaintiff does allege in both pleadings that he is 63 years old. (Doc. 8 at 2; Doc. 22 at 5.) However, that is the beginning and end of his attempt to allege facts to support his age discrimination claim. The Court will therefore dismiss the ADEA claim in Plaintiff's Amended Complaint for failure to state a claim, and will deny Plaintiff leave to assert the ADEA claim in his proposed Second Amended Complaint on the basis of futility.

### C. *Plaintiff's Amended Complaint and proposed Second Amended Complaint fail to state a plausible claim of retaliation in violation of Title VII.*

Finally, Defendant argues that the Court should dismiss the Title VII retaliation claim in the Amended Complaint for failure to state a claim, and should deny Plaintiff leave to assert the retaliation claim in his proposed Second Amended Complaint on the basis of futility. (Doc. 9 at 7-11; Doc. 23 at 12-15.) To establish a prima facie case of retaliation under Title VII, a plaintiff must show that:  (1) he "engaged in protected opposition to discrimination"; (2) "a reasonable employee would have found the [employer's] challenged action materially adverse"; and, (3) "a causal connection existed between the protected activity and the materially adverse action." *Bekkem*, 915 F.3d at 1267; *Khalik*, 671 F.3d at 1193.

To establish a causal connection between protected activity and an adverse employment action,

> a plaintiff must present evidence of circumstances that justify an inference of retaliatory motive. If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection.  However, a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its own. Thus, where a gap of three months or longer has occurred, a plaintiff must present other evidence—more than mere speculation, conjecture,

15

> or surmise—to establish that [his] protected activity was a but-for cause of the adverse employment action.

*Bekkem,* 915 F.3d at 1271 (quotation marks and citations omitted).

Defendant argues that the allegations in Plaintiff's Amended Complaint and proposed Second Amended Complaint are insufficient to state a Title VII retaliation claim because, *inter alia*, Plaintiff has not plausibly alleged a causal connection between his protected activity and the employment actions of which he complains. (Doc. 9 at 9-10; Doc. 23 at 14-15.) The Court agrees. In his Amended Complaint, Plaintiff alleges that he "opposed discrimination in the workplace when he filed his initial EEO complaint in March of 2019," and "[b]eginning in December of 2019, [he] has been subjected to a hostile work environment." (Doc. 8 at 2.) Similarly, in his proposed Second Amended Complaint, Plaintiff alleges that he "opposed discrimination in the workplace when he filed his initial EEO complaint in March of 2019" alleging a racially hostile work environment, and "[a]gain in December of 2019, [he] has been subjected to a hostile work environment." (Doc. 22 at 5-6.)

In both pleadings, the only protected activity Plaintiff alleges is the filing of his initial EEO complaint in March 2019; and, in both pleadings, he alleges the hostile work environment forming the basis of his retaliation claim began in December 2019. (*See generally* Docs. 8, 22.) Assuming Plaintiff filed his initial EEO complaint on the last day of March and the hostile work environment at issue began on the first day of December, eight months elapsed between these two events. Under Tenth Circuit law, an eight-month "gap between protected activity and an adverse action is too long to support an inference of causation on its own." *Bekkem,* 915 F.3d at 1271. Nor has Plaintiff alleged any other facts that would support the inference of a causal connection between his protected activity and the employment actions of which he complains. (*See generally* Docs. 8, 22.)

According to Plaintiff, his "allegations are sufficient to make a plausible claim of retaliation" because "the EEO investigation concluded in November of 2019," "the hostile work environment began again in December of 2019," and the one-month interval between these two events is sufficient to support an inference of causation. (Doc. 27 at 3; Doc. 33 at 7.) However, Tenth Circuit law squarely refutes this argument. In *Proctor v. United Parcel Service*, 502 F.3d 1200 (10th Cir. 2007), the plaintiff argued "that he engaged in protected activity until the last administrative agency . . . issued its finding of no probable cause and its right-to-sue letter[.]" *Id.* at 1208–09. The Tenth Circuit disagreed. *Id.* "Not surprisingly, the Supreme Court has characterized this argument as 'utterly implausible'" because the employee "t[akes] no part in the agency determination." *Id.* at 1209 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Similarly, in *Xia v. Salazar*, 503 F. App'x 577 (10th Cir. 2012), the court held that the time between the plaintiff's protected activity and the employer's adverse action was "correctly measured from the filing of [the plaintiff's EEOC] complaint" where the plaintiff "offer[ed] no evidence of his participation in the EEOC investigation of his claim other than filing it." *Id.* at 580. In short, in the Tenth Circuit, temporal proximity is measured from *the plaintiff's* "last instance of protected activity," *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007), and not *the agency's* conclusion of an investigation. And, according to both the Amended Complaint and the proposed Second Amended Complaint, Plaintiff's last instance of protected activity was his filing of an EEO complaint at least eight months before the complained-of conduct began.

For the first time in his response to Defendant's Motion to Dismiss, Plaintiff argues that he "was required to participate in the EEO investigation" and "provided a statement during the investigation," suggesting that these two activities occurred close enough in time to the conduct of

17

which he complains to demonstrate a causal connection. (Doc. 33 at 7.) This argument fails for two reasons. First, nowhere in his Amended Complaint or proposed Second Amended Complaint does Plaintiff allege that he participated in or provided a statement during the investigation of his initial EEO complaint. (*See* Doc. 8; Doc. 22 at 4-9.) Arguments in a brief are no substitute for allegations in a complaint. *See Iqbal*, 556 U.S. at 678 ("[A] *complaint* must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (emphasis added) (quotation marks omitted).

Second, nowhere does Plaintiff indicate *when* he provided a statement or otherwise participated in the EEO investigation at issue. (*See* Doc. 33 at 7.) For all the Court knows, Plaintiff may have engaged in these activities three months or more before December 2019, when the conduct of which he complains allegedly began. And if so, once again, the gap between Plaintiff's protected activity and his employer's actions would be "too long to support an inference of causation on its own." *Bekkem,* 915 F.3d at 1271. In sum, in neither his Amended Complaint nor his proposed Second Amended Complaint does Plaintiff plausibly allege a causal connection between his protected activity and the employment actions of which he complains. The Court will therefore dismiss the Title VII retaliation claim in Plaintiff's Amended Complaint for failure to state a claim. In addition, the Court will deny Plaintiff leave to assert the retaliation claim in his proposed Second Amended Complaint on the basis of futility.[7]

### D. The Court will permit Plaintiff to file a motion for leave to file a revised second amended complaint.

---

[7] Because the Court grants Defendant's request for dismissal of the retaliation claim in the Amended Complaint based on Plaintiff's failure to plausibly allege a causal connection, and denies Plaintiff's request for leave to assert the retaliation claim in his proposed Second Amended Complaint on the same grounds, the Court need not address Defendant's other arguments in opposition to Plaintiff's retaliation claim in this Memorandum Opinion and Order. (Doc. 9 at 7-11.)

The foregoing discussion clearly shows that Plaintiff's proposed Second Amended Complaint would be futile because it "would be subject to dismissal" if filed. *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. at 580. However, at present, the record still allows for the possibility that Plaintiff could allege sufficient facts to plausibly state claims for unlawful discrimination and/or retaliation. Indeed, Plaintiff's argument that he engaged in protected activities after filing his initial EEO complaint affirmatively suggests that he might be able to plausibly state a retaliation claim, if the conduct of which he complains began shortly after he engaged in these activities, and if his supervisor knew about them. (Doc. 33 at 7); *see generally Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008) ("[A]n employer may not retaliate against an employee because the employee has *participated in any manner* in an investigation, proceeding, or hearing under Title VII.") (emphasis in original) (quotation marks and alterations omitted); *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) ("[I]f the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference[.]"); *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009) ("To establish a causal connection, [the plaintiff] must show that the individuals who took adverse action against him knew of his protected opposition.").

Nevertheless, Plaintiff has already had three opportunities—*i.e.*, in his original complaint, Amended Complaint, and proposed Second Amended Complaint—to plausibly state a claim for relief; and, "[d]istrict courts have the discretion to deny leave to amend for failure to cure deficiencies by amendments previously allowed." *Bekkem*, 915 F.3d at 1276 (quotation marks omitted). As such, the Court will not blindly grant Plaintiff yet another chance to amend the pleadings. Rather, the Court will allow Plaintiff three weeks in which to file a motion for leave to file a revised second amended complaint that (1) satisfies the substantive and procedural

requirements discussed in this Memorandum Opinion and Order and (2) is otherwise legally and factually sufficient. Plaintiff's motion for leave to amend must be properly supported and must comply with the Federal Rules of Civil Procedure and this Court's Local Civil Rules. The Court cautions Plaintiff that, should he fail to timely file such a motion, it may dismiss this action with prejudice without further notice for the reasons stated herein.

### III.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Defendant's Motion to Dismiss First Amended Complaint for Failure to State a Claim and Memorandum in Support (Doc. 9) is GRANTED;

2. Plaintiff's Opposed Motion for Leave to Amend Complaint (Doc. 22) is DENIED;

3. Plaintiff's Amended Complaint for Employment Discrimination on the Basis of Race, Color, Age and Retaliation (Doc. 8) is DISMISSED WITHOUT PREJUDICE; and,

4. On or before **Thursday, October 28, 2021**, Plaintiff may file a motion seeking leave to file a revised second amended complaint that satisfies the requirements described in this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent