**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROBERT SMITH,

Plaintiff,

v. Civ. No. 20-1321 KK/JFR

DENIS MCDONOUGH,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Opposed Motion for Leave to Amend Complaint (Doc. 37), filed October 28, 2021. The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise sufficiently advised, FINDS that Plaintiff's motion is well taken and should be GRANTED.

## I. BACKGROUND

Plaintiff Robert Smith filed his original complaint on December 18, 2020. (Doc. 2.) On April 5, 2021, he filed an Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1). (Doc. 8.) In his Amended Complaint, he alleged the following. Plaintiff is a 63-year-old, Black African American who began working for the federal government in 2002. (*Id.* at 2.) He is presently employed as an "IT Supervisor" with the United States Department of Veterans Affairs ("VA"). (*Id.*) Defendant Denis McDonough is the VA Secretary.[1] (*Id.*)

In March 2019, Plaintiff filed an "EEO complaint." (*Id.*) "The EEO investigation concluded" in November 2019. (*Id.*) Beginning in December 2019, Plaintiff was "subjected to a

[1] Defendant McDonough has been automatically substituted for former VA Secretary Robert Wilkie pursuant to Federal Rule of Civil Procedure 25(d).

hostile work environment" that included being "criticized for performance," "subjected to a heavy work load compared to other IT personnel," "downgraded in [his] annual performance evaluation," "blamed for failed projects that [he was] not assigned," "left out of important daily meetings or emails making it difficult to perform his duties," "demeaned and humiliated in front of peers," "harassed about not closing tickets," and "prevented from receiving training." (*Id.* at 2-3.) As a result of this treatment, Plaintiff lost wages and benefits and experienced emotional distress. (*Id.* at 3.)

Based on these allegations, Plaintiff claimed that Defendant had discriminated against him due to his race and color in violation of Title VII and due to his age in violation of the Age Discrimination in Employment Act ("ADEA"). (*Id.* at 3-4.) Plaintiff also claimed that Defendant had retaliated against him in violation of Title VII. (*Id.* at 5.)

On April 19, 2021, Defendant moved to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 9.) Plaintiff filed a responsive motion seeking leave to file a proposed second amended complaint on May 13, 2021. (Doc. 22.) On October 7, 2021, the Court granted Defendant's motion, dismissed Plaintiff's Amended Complaint without prejudice, and denied Plaintiff's motion to amend. (Doc. 36 at 20.)

In its Memorandum Opinion and Order, the Court dismissed each of Plaintiff's claims for failure to state a claim on which relief can be granted. (*Id.*) The Court dismissed Plaintiff's claims for race and color discrimination because he failed to plausibly allege discriminatory motivation or an adverse employment action. (*Id.* at 7-14.) The Court also dismissed Plaintiff's age discrimination claim because he failed to present any allegations to support the inference that he was mistreated because of his age. (*Id.* at 14-15.) And, the Court dismissed Plaintiff's retaliation

claim because he failed to plausibly allege a causal connection between his protected activity and Defendant's adverse employment actions. (*Id.* at 15-18.) The Court further determined that Plaintiff's proposed second amended complaint did not remedy these defects and would therefore be futile. (*Id.* at 7-19.) However, the Court allowed Plaintiff to seek leave to file a factually and legally sufficient revised second amended complaint. (*Id.* at 18-20.)

On October 28, 2021, Plaintiff timely filed an Opposed Motion for Leave to Amend Complaint, attaching his revised proposed Second Amended Complaint to the motion. (Doc 37.) On November 12, 2021, Defendant filed a response in opposition, and on December 13, 2021, Plaintiff filed a reply in support. (Docs. 38, 41.) Plaintiff filed a Notice of Completion of Briefing on January 28, 2022. (Doc. 43.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 15 provides that, absent circumstances not applicable here, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Whether to grant leave to amend is within the trial court's discretion. *Bradley v. Val-Mejias*, 379 F.3d 892, 900–01 (10th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and should bear in mind that Rule 15 is intended "to provide litigants with the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation marks and citations omitted).

However, a court may deny leave to amend on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quotations and citations omitted). A pleading is futile if, "as amended, [it] would be subject to dismissal." *In re Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. 571, 580 (D.N.M. 2010) (quoting *Bradley*, 379 F.3d at 901). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim," *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999), and "the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Rule 12(b)(6)." *Childs v. Unified Life Ins. Co.*, 781 F. Supp. 2d 1240, 1251 (N.D. Okla. 2011) (brackets omitted). "The burden of showing futility rests with the defendant[] who assert[s] this ground in opposing the plaintiff's [motion for] leave to amend." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 953 F. Supp. 2d 1176, 1181 (D. Kan. 2013), *aff'd*, 810 F.3d 1161 (10th Cir. 2016).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020).

In determining whether a complaint states a plausible claim to relief, courts "accept as true all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotation marks omitted).

## III. DISCUSSION

Plaintiff has moved for leave to amend and has submitted a proposed Second Amended Complaint ("revised SAC"). (Doc. 37 at 1, 4-11.) Defendant opposes Plaintiff's motion on the grounds that the revised SAC is futile because it fails to plausibly allege: (1) a discriminatory motivation, (Doc. 38 at 4), (2) an adverse employment action, (*id.* at 8), or (3) retaliation, (*id.* at 8–9).

### A. The revised SAC plausibly alleges discriminatory motivation.

Title VII makes it "an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color[.]" 42 U.S.C. § 2000e-2(a)(1). When a plaintiff relies on circumstantial evidence of discrimination, courts analyze the claim using "the *McDonnell Douglas* burden-shifting framework," whereby "the plaintiff has the initial burden of establishing a prima facie case of discrimination." *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019). At the pleading stage, a plaintiff is not required to establish a prima facie case in his complaint, but "the elements of each alleged cause of action help to determine

whether [he] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

To establish a prima facie disparate treatment claim, a plaintiff must generally show that: (1) the "plaintiff belongs to a protected class"; (2) "he suffered an adverse employment action"; and, (3) "the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). To establish a prima facie hostile work environment claim, in turn, a plaintiff must show "membership in a protected group, unwelcome harassment based on the protected characteristic, and due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Glapion v. Castro*, 646 F. App'x 668, 671 (10th Cir. 2016) (quotation marks omitted). Thus, both types of claims require a discriminatory motive for the challenged acts.

Defendant contends that Plaintiff has failed to plausibly allege facts supporting an inference of discriminatory motive. (Doc. 38 at 4-7.) An employment discrimination plaintiff must include in his complaint "enough context and detail to link the allegedly adverse employment action to a discriminatory … motive with something besides sheer speculation." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019) (quotation marks and citations omitted). One way to show discriminatory motive is to allege facts "that taken together plausibly suggest differential treatment of similarly situated employees." *Id.* at 1275 (quotation marks and citations omitted).

In his revised SAC, Plaintiff asserts that he was treated less favorably than a 49-year-old Hispanic co-worker who was also a "GS 13 IT supervisor" with "the same job duties" and "the

same supervisor" as Plaintiff. (Doc 37 at 5-8.) *Inter alia*, Plaintiff claims that, unlike his co-worker, he was "criticized for his performance," "subjected to a heavy workload," "downgraded in [an] annual performance evaluation," "blamed for [the co-worker's] failed projects," "left out of important daily meetings or emails making it difficult to perform his duties," "demeaned and humiliated" by his supervisor "in front of peers," "harassed about not closing two tickets," and "prevented from receiving training." (*Id.* at 6-7.) Plaintiff also claims that his supervisor revoked Plaintiff's "supervisor[y] duties" but not those of his co-worker. (*Id.* at 8.)

Defendant argues that Plaintiff's allegations fail to raise an inference of discriminatory motive because Plaintiff does not sufficiently allege that his coworker was similarly situated to him. (Doc. 38 at 5-6.) "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006). "[A] court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.* (quotation marks omitted). In addition, where disparate discipline is alleged, similarly situated employees "must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant." *Id.* (quotation marks omitted).

The Court finds that, in his revised SAC, Plaintiff has plausibly alleged sufficient facts to support the inference that his co-worker "deal[t] with the same supervisor and [was] subject to the same standards governing performance evaluation and discipline." *Id.* In particular, Plaintiff alleges that his co-worker had the same job title, job duties, salary ranking, and supervisor. (Doc. 37 at 5-8.) Thus, the revised SAC alleges facts materially distinct from, for

example, the facts in *McGowan*, where the plaintiff, a "jailer," and her co-worker, a "booking officer," had "different responsibilities," "engaged in different conduct," and "made different mistakes[.]" 472 F.3d at 745.

According to Defendant, Plaintiff's revised SAC nevertheless leaves "wholly open" the possibility that his co-worker was *not* similarly situated, because the co-worker was at some point "given an 'acting manager' role," did not have his supervisory duties revoked, and may have left his tickets unclosed for a different length of time than Plaintiff. (Doc. 38 at 5-6.) In so arguing, Defendant overlooks that the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff" when considering whether a claim is subject to dismissal under Rule 12(b)(6). *Schrock*, 727 F.3d at 1280 (quotation marks omitted).

Accepting Plaintiff's well-pleaded factual allegations as true and viewing them in the light most favorable to him, he and his co-worker could have had the same job duties at relevant times even though the co-worker temporarily played a managerial role.[2] Also, Defendant cannot defeat similarity by relying on the fact that Plaintiff's co-worker may have ceased to be similarly situated due to the very disparate treatment of which Plaintiff complains. What is "legally relevant" in this circumstance is whether Plaintiff and the co-worker were similarly situated up to the point of the disparate treatment. *See generally Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1182 (10th Cir. 2002). As such, that Defendant allegedly revoked Plaintiff's supervisory

---

[2] Plaintiff alleges that his co-worker was given an "acting manager" position. (Doc. 37 at 6.) In this context, "acting" is defined as "holding a temporary rank or position[;] performing services temporarily." https://www.merriam-webster.com/dictionary/acting (last visited Mar. 3, 2022).

duties but not his co-worker's fails to undermine Plaintiff's allegations that he and the co-worker were similarly situated.

And finally, viewed in the light most favorable to Plaintiff, the allegation that Plaintiff was harassed for leaving two tickets open while his co-worker was not harassed for leaving "numerous" tickets open is sufficient to plausibly allege differential treatment for conduct of comparable seriousness, even though Plaintiff did not allege how long his two tickets had been left open. (Doc. 37 at 7.) The Court therefore finds that, in his revised SAC, Plaintiff sufficiently alleges that he was treated less favorably than a similarly situated, younger, non-African American co-worker, which plausibly raises an inference of discriminatory motivation.

**B. The revised SAC plausibly alleges adverse employment action.**

To bring a claim for employment discrimination, a plaintiff must plausibly allege that he has "suffered an adverse employment action." *Khalik*, 671 F.3d at 1192.

> Conduct rises to the level of 'adverse employment action' when it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (quotation marks and citations omitted). "[A]n adverse employment action is not limited to such acts[,]" and courts are to "liberally interpret" this element and "take a case-by-case approach, examining the unique factors relevant to the situation at hand." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quotation marks and citations omitted). "Actions presenting nothing beyond a mere inconvenience or alteration of responsibilities, however, do not constitute adverse employment action." *Stinnett*, 337 F.3d at 1217 (quotation marks and citations omitted).

Defendant argues that the revised SAC "alleges the same acts of purported disparate treatment that the Court has already rejected as inadequate" to show adverse employment action "in the prior proposed amendment." (Doc. 38 at 7.) In fact, however, the revised SAC alleges several instances of race- and age-based differential treatment that were not characterized as such in Plaintiff's prior proposed amendment. (*Compare* Doc. 22 at 6 *with* Doc. 37 at 6-8.) These include being denied an acting manager position, downgraded in an annual performance evaluation, left out of important daily meetings and emails, and prevented from receiving training, as well as having his supervisory duties revoked, all unlike his similarly situated, younger, non-African American co-worker. (Doc. 37 at 5-8.) Plaintiff further alleges that the performance evaluation downgrade affected his bonus and promotion prospects; being left out of meetings and emails made it difficult to perform his job; and, Defendant's discriminatory acts caused him to lose wages and benefits. (*Id.* at 6-8.) Viewed in the light most favorable to Plaintiff, these allegations encompass more than a mere inconvenience or alteration of responsibilities and are sufficient to allege adverse employment action. *Stinnett*, 337 F.3d at 1217; *cf. Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 732 (10th Cir. 2014) (an evaluation downgrade is not an adverse employment action where the downgrade did not decrease the employee's bonus); *see also Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009) (if an "evaluation determines the bonus," a poor performance evaluation may be an adverse employment action).

**C. The revised SAC plausibly alleges retaliation.**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected activity; (2) "a reasonable employee would have found the [employer's] challenged action materially adverse"; and, (3) "a causal connection existed between the protected

activity and the materially adverse action." *Bekkem*, 915 F.3d at 1267 (quoting *Khalik*, 671 F.3d at 1193). Defendant argues that the revised SAC "fails on all three elements." (Doc. 38 at 9.)

On the first element, the Court notes that under Title VII, "[p]rotected activities fall into two distinct categories: participation or opposition." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1151 (10th Cir. 2008). The "opposition clause" makes it unlawful for an employer to discriminate against an employee "because he has opposed any … unlawful employment practice" under Title VII, while the "participation clause" makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. *Id.*; 42 U.S.C. § 2000e-3(a).

"[T]he scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause." *Vaughn*, 537 F.3d at 1151. Under the opposition clause, a plaintiff must have "a reasonable good-faith belief" that Title VII prohibits the conduct he opposes. *Crumpacker v. Kansas Dep't of Hum. Res.*, 338 F.3d 1163, 1171-72 (10th Cir. 2003). In contrast, the participation clause protects "any" participation in a governmental investigation, proceeding, or hearing conducted pursuant to Title VII. *See Vaughn*, 537 F.3d at 1151-52; *Randall v. New Mexico*, No. CV 1:13-398 CG/LAM, 2014 WL 12785141, at *4–5 (D.N.M. Nov. 5, 2014).

Defendant argues that "the Court should decline to consider a retaliation claim under the participation clause" because "Plaintiff continues to rely solely on the opposition clause." (Doc. 38 at 9.) The Court disagrees. In his revised SAC, Plaintiff does allege that Defendant retaliated against him "for *opposing* discriminatory practices in the workplace." (Doc. 37 at 10 (emphasis added).) However, he adds that "[t]he retaliation is based on the facts alleged above"; and, "the

facts alleged above" include *participation* in a federal EEO proceeding under Title VII.[3] (*Id.* at 5-6.) As Plaintiff emphasizes in his reply, the revised SAC "clearly states that [Plaintiff] filed an EEO complaint" alleging racial discrimination and "further reiterated that he was a participa[nt] in the EEO investigation." (Doc. 41 at 3-4.) In short, Plaintiff has plainly alleged that he engaged in protected activity under the participation clause and need not allege protected activity based on a reasonable good-faith belief under the opposition clause. *Vaughn*, 537 F.3d at 1151-52; *Randall*, 2014 WL 12785141 at *4-5.

Turning to the second element of a retaliation claim, Defendant argues that Plaintiff "fails to allege that Defendant took any action that a reasonable person would have found materially adverse." (Doc. 38 at 11.) To satisfy this element, Plaintiff must allege conduct "that would have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Braxton v. Nortek Air Sols., LLC*, 769 F. App'x 600, 606 (10th Cir. 2019) (quotation marks and citations omitted). The Court has already found that Plaintiff has plausibly alleged adverse employment action occurring after the protected activity in the context of his race and age discrimination claims. For the same reasons, the Court finds that he has sufficiently alleged conduct that would have dissuaded a reasonable worker from making or supporting a discrimination charge in the context of his retaliation claim.

---

[3] Defendant does not dispute that a federal EEO proceeding regarding a race discrimination complaint is a governmental proceeding under Title VII within the meaning of the participation clause. (*See generally* Doc. 38); *see also, e.g.*, *Cefalu v. Holder*, No. C12-0303 TEH, 2013 WL 5315079, at *11 (N.D. Cal. Sept. 23, 2013), *on reconsideration in part on other grounds*, No. C12-0303 TEH, 2013 WL 6671799 (N.D. Cal. Dec. 18, 2013) (filing an EEO complaint is a protected activity).

On the third and final element of a retaliation claim, Defendant argues that Plaintiff fails to plausibly allege a causal connection between his protected activity and Defendant's adverse employment actions. (Doc. 38 at 15.) To establish a causal connection between protected activity and adverse employment action, "a plaintiff must present evidence of circumstances that justify an inference of retaliatory motive." *Bekkem*, 915 F.3d at 1271 (quotation marks omitted). In the Tenth Circuit, if adverse employment action "occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013). However, "where a gap of three months or longer has occurred, a plaintiff must present other evidence … to establish that [his] protected activity was a but-for cause of the adverse employment action." *Bekkem*, 915 F.3d at 1271.

In the revised SAC, Plaintiff alleges that he submitted a supplemental EEO complaint "with additional evidence of discrimination" in November 2019. (Doc. 37 at 6.) He further alleges that the retaliation of which he complains began in December 2019. (*Id.*) The alleged temporal proximity between Plaintiff's protected activity and Defendant's adverse employment action is sufficient to raise the inference of a causal connection between the two. *Conroy*, 707 F.3d at 1181.

Defendant argues that the revised SAC "alleges no facts to show that the supervisor or other responsible party knew about Plaintiff's activities in October and November 2019. Absent such knowledge, it is implausible to assume that these specific activities are what triggered any retaliatory" conduct. (Doc. 38 at 16.) But, accepting Plaintiff's well-pleaded factual allegations as true and viewing them in the light most favorable to him, it is reasonable to infer that Plaintiff's

supervisor – who allegedly engaged in at least some of the claimed retaliatory conduct[4] – would have been told of Plaintiff's EEO complaints because these complaints accused him of discrimination.[5] (Doc. 37 at 5-8.) For these reasons, the Court finds that Plaintiff has plausibly alleged a causal connection between his protected activity and Defendant's adverse employment actions.

## IV. CONCLUSION

The pleading standards under Rules 8(a) and 12(b) are relatively forgiving; a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's revised SAC meets this standard and is therefore not futile. *Gohier*, 186 F.3d at 1218; *Thornburg Mortg., Inc. Sec. Litig.*, 265 F.R.D. at 580. Moreover, under Rule 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

IT IS THEREFORE ORDERED that Plaintiff's Opposed Motion for Leave to Amend Complaint (Doc. 37) is GRANTED. Plaintiff may file the Second Amended Complaint for Employment Discrimination on the Bas[e]s of Race, Color, Age and Retaliation (Doc. 37 at 4-11) attached to his motion no later than March 14, 2022.

---

[4] As Defendant points out, Plaintiff does not expressly allege that his supervisor, Mr. Nutter, was the person who engaged in *all* of the retaliatory conduct of which he complains. (Doc. 38 at 16 & n.4.) However, the inference is a reasonable one given that Mr. Nutter is the only supervisor Plaintiff mentions in the revised SAC and all of the alleged retaliatory conduct is supervisory in nature.

[5] Moreover, precisely when Mr. Nutter was told of Plaintiff's EEO complaints does not seem like the kind of "detail[]" Plaintiff would necessarily know and could properly plead before discovery. *Khalik*, 671 F.3d at 1194.

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE