## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROBERT SMITH,

      Plaintiff,

vs.                                Civ. No. 20-1321 KK/JFR

DENIS MCDONOUGH, Secretary of
U.S. Department of Veterans Affairs,[1]

      Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant's Supplemental Brief Supporting His Summary-Judgment Motion (Doc. 101) ("Supplement"), filed April 8, 2024, in which Defendant seeks summary judgment on Plaintiff's remaining claims; and, (2) the Court's *sua sponte* review of its March 29, 2024 Memorandum Opinion and Order (Doc. 100) ("March Order") in light of *Muldrow v. City of St. Louis, Mo.*, 601 U.S. —, 144 S. Ct. 967 (2024), in which the Supreme Court abrogated two Tenth Circuit decisions on which this Court previously relied. For the following reasons, the Court concludes that: (1) Defendant is entitled to summary judgment on Plaintiff's remaining claims; and, (2) although *Muldrow* affects the Court's reasoning as to certain claims addressed in its March Order, the decision does not require the Court to change its disposition of these claims.

## I.    Factual and Procedural Background[2]

Plaintiff Robert Smith is a Black African American born in 1957. (Doc. 100 at 3.) He has worked as an Information and Technology ("IT") supervisor for the United States Department of

---

[1] Defendant McDonough has been automatically substituted for former Secretary Robert Wilkie pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court's March Order includes a more comprehensive description of this matter's factual and procedural background, which the Court will not repeat here. (*See* Doc. 100 at 1-15.)

Veterans Affairs ("VA") since 2010. (*Id.*) He filed this action in December 2020, claiming that his employer discriminated against him because of his race, color, age, opposition to discriminatory practices, and participation in Equal Employment Opportunity ("EEO") proceedings, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). (Doc. 2.) On March 11, 2022, Plaintiff filed a Second Amended Complaint for Employment Discrimination on the Bas[e]s of Race, Color, Age and Retaliation ("SAC"), in which he indicates that he bases his claims on the alleged actions of his supervisor, Jerome Nutter. (Doc. 45.) Plaintiff's counsel was allowed to withdraw in September 2023, and since then Plaintiff has been proceeding *pro se*. (Doc. 89.)

In August 2023, Defendant filed a motion seeking summary judgment on all of the claims asserted in the SAC. (Doc. 85.) The motion was fully briefed by November 2023. (Docs. 90, 93.) In its March Order, the Court granted the motion as to all of Plaintiff's race and age discrimination claims. (Doc. 100 at 33.) The Court also granted the motion as to Plaintiff's retaliation claims, except those arising out of Mr. Nutter's alleged retaliatory actions in December 2019. (*Id.*) The Court notified the parties of its inclination to grant summary judgment on the remaining retaliation claims on grounds not raised in Defendant's motion, and set a briefing schedule for the parties to address the alternative grounds it identified. (*Id.* at 33-34.) On April 8, 2024, Defendant timely filed his Supplement in accordance with the March Order. (Doc. 101.) However, Plaintiff failed to file a supplemental response within the time allowed.

On April 17, 2024, before the deadline for Plaintiff's supplemental response expired, the Supreme Court issued its decision in *Muldrow*, abrogating two Tenth Circuit decisions on which the Court relied in its March Order. *Muldrow*, 144 S. Ct. at 973 n.1, 975 (abrogating *Daniels v.*

*United Parcel Serv., Inc.*, 701 F.3d 620 (10th Cir. 2012) and *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527 (10th Cir. 1998)).

## II.   Defendant Is Entitled to Summary Judgment on Plaintiff's Remaining Retaliation Claims.

In his SAC, Plaintiff claims that his supervisor, Mr. Nutter, unlawfully retaliated against him in several ways after he filed an EEO complaint in March 2019 and a supplemental EEO complaint in October 2019. (Doc. 45 at 2-5, 7); *see* 42 U.S.C. § 2000e-3(a). In its March Order, the Court granted summary judgment in Defendant's favor on all but two of these claims on the only ground Defendant raised in his summary judgment motion, *i.e.*, the lack of any evidence of a retaliatory motive. (Doc. 100 at 30-32.) The two claims that survived are Plaintiff's claims arising out of Mr. Nutter's alleged retaliatory actions in December 2019, that is, (1) his assignment of the "Vocera" project to Plaintiff, and (2) his downgrade of Plaintiff's 2019 annual performance evaluation rating. (*Id.* at 32.) However, the Court noted its inclination to grant Defendant summary judgment on these claims on the following grounds, which were not raised in Defendant's motion: (1) that, as a matter of law, a reasonable employee would not consider the assignment of the Vocera project to be materially adverse; and, (2) that Defendant has proffered legitimate, nonretaliatory reasons for the challenged actions and a reasonable juror could not find the proffered reasons to be pretextual. (*Id.* at 32-33.)

Having notified the parties of its inclination, the Court invited supplemental briefing on the grounds identified in the March Order. (*Id.* at 33.) Defendant timely filed a supplemental brief pursuant to the order, (Doc. 101), but Plaintiff did not file a supplemental response within the time

3

allowed. As explained below, the Court now finds that Defendant is entitled to summary judgment on Plaintiff's two remaining retaliation claims.

### A. Applicable Legal Standards

#### 1. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); *see* Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the movant carries this initial burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence … from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (quotation marks omitted). If there is a "genuine dispute" as to material facts, the Court views the facts in the light most favorable to the nonmovant. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, "unsupported conclusory allegations do not create a genuine issue of fact." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Moreover, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Federal

Rule of Civil Procedure 56(f), courts may grant summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(2).

2. *Standards Governing Title VII Retaliation Claims*

When a "plaintiff seeks to prove a Title VII retaliation claim through indirect or circumstantial evidence, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* [411 U.S. 792 (1973)], applies." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). Under this analysis, the plaintiff bears the initial burden to establish a prima facie case by showing that: (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found his employer's subsequent action to be materially adverse; and, (3) a causal connection exists between the protected activity and the materially adverse action. *Overfield v. Kansas*, 2024 WL 1611473, at *8 (10th Cir. Apr. 15, 2024); *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009); *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006).

If the plaintiff can establish a prima facie case, the burden shifts to the defendant to offer a legitimate, nonretaliatory reason for its employment action. *Pinkerton*, 563 F.3d at 1064; *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext for retaliation. *Pinkerton*, 563 F.3d at 1064; *Vaughn*, 537 F.3d at 1150. "If there is reason to believe the employer's reasons are pretextual, the case may be submitted to the jury." *McGowan*, 472 F.3d at 741.

**B.      Defendant is entitled to summary judgment on Plaintiff's Retaliation Claim Based on the Vocera Project.**

*1.      Material Facts*

The following material facts are undisputed. Plaintiff has worked as a GS-13 IT supervisor at the VA hospital in Albuquerque, New Mexico, since 2010. (Doc. 85-1 at 3-5.) Frank Martinez, who is Hispanic and younger than Plaintiff, is also a GS-13 IT supervisor at the VA hospital in Albuquerque. (Doc. 85 at 2; Doc. 85-1 at 5.) Mr. Nutter, a Caucasian born in 1956, has directly supervised Plaintiff since 2010 and directly supervises Mr. Martinez as well. (Doc. 85-1 at 4-5, 25; Doc. 85-2 at 2.) From time to time, Mr. Nutter assigns projects to Plaintiff and Mr. Martinez in his role as their "boss." (Doc. 85-1 at 19-20.)

Plaintiff filed an initial EEO complaint on or about March 2, 2019, and a supplemental or amended EEO complaint on or about October 11, 2019. (Doc. 45 at 2-3; Doc. 46 at 2.) In or about December 2019, Mr. Nutter pulled Mr. Martinez off the Vocera project and gave it to Plaintiff. (Doc. 85-1 at 16-18.) Plaintiff does not know why Mr. Nutter reassigned the Vocera project to him. (*Id.* at 17-18.) The project involved setting up "walkie-talkies" for medical staff at the hospital. (*Id.* at 17.)

After Mr. Nutter reassigned this project to Plaintiff, Plaintiff had to perform tasks including "catch[ing] up" on the project's requirements and on meetings he had not attended, "coordinat[ing] with] other tier groups," "request[ing] servers and all those things," and "reach[ing] out to the vendor and talk[ing] to him." (*Id.*) It took Plaintiff "maybe five days" to catch up on the project

while also working on his other tasks.[3] (*Id.*) One or more of the employees under Plaintiff's supervision helped him with the project. (*Id.* at 18.)

The Vocera project was carried out in phases and was to be completed in or about March 2020. (*Id.* at 17.) Plaintiff was able to complete the project in time and to complete his other tasks while doing so. (*Id.* at 18, 21.) He never told Mr. Nutter his workload was too heavy during this time, and he does not know what tasks Mr. Nutter assigned to Mr. Martinez. (*Id.* at 20-21.)

> 2.      *Analysis*

As noted above, one of the elements a plaintiff must show to establish a prima facie retaliation case is that a reasonable employee would have found the challenged action to be "materially adverse." *Overfield*, 2024 WL 1611473, at *8; *Semsroth*, 555 F.3d at 1184; *McGowan*, 472 F.3d at 741. An employment action is materially adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ("*White*"); *Semsroth*, 555 F.3d at 1184. "[W]hile the standard is sensitive to the particular circumstances of each case, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances." *Semsroth*, 555 F.3d at 1184 (citations omitted). Rather, each employment action must be "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *White*, 548 U.S. at 71 (quotation marks omitted). Ordinarily, "petty slights, minor

---

[3] In its March Order, the Court stated that Plaintiff testified that it took him "'maybe five days' to *complete* the project while also working on his other tasks." (Doc. 100 at 6 (emphasis added).) In fact, however, Plaintiff testified that it took him that long "to *catch up on* the project." (Doc. 85-1 at 17 (emphasis added).)

annoyances, and simple lack of good manners" do not rise to the level of material adversity. *Id.* at 68.

"[J]ob duty assignments," in particular, "are neither automatically actionable nor categorically non-actionable" in Title VII retaliation cases. *Semsroth*, 555 F.3d at 1184-85. Rather, courts "take a case-by-case approach, asking whether the record contains objective evidence of material disadvantage or merely the bald personal preferences of the plaintiff." *Id.* at 1185. "If only the latter, the retaliation claim fails." *Id.*

Thus, in *White*, the Supreme Court held that a reasonable juror could find the defendant's reassignment of the plaintiff's job duties to be materially adverse where the new duties made the plaintiff's job "more arduous," "dirtier," and less prestigious. 548 U.S. at 71. But in *Semsroth*, the Tenth Circuit affirmed the district court's determination that certain reassignments were not materially adverse where the record contained no evidence that the light duty position the plaintiff wanted was "objectively preferable—in terms of pay, benefits, or work load—to the light duty [positions she was assigned]." 555 F.3d at 1186. And in *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321 (5th Cir. 2009), the Fifth Circuit held that a reasonable juror could not find materially adverse a job reassignment that, "although imposing more work, carried greater responsibility and would not dissuade a reasonable employee from charging discrimination." *Id.* at 332-33.

Here, there is no record evidence that the Vocera project was more onerous, less prestigious, or in any way less desirable than any other project Mr. Nutter assigned to Plaintiff or Mr. Martinez. There is also no evidence that Mr. Nutter's reassigning the Vocera project to Plaintiff caused a significant disparity in Plaintiff's and Mr. Martinez's respective workloads. Nor

is there any evidence that the reassignment negatively affected Plaintiff's hours, compensation, or benefits, or imperiled his job security.

Rather, viewed in Plaintiff's favor, the evidence at most shows that Mr. Nutter reassigned the project from Mr. Martinez to Plaintiff in his role as their supervisor, and that Plaintiff was able to quickly catch up on the project, and to complete it on time, while also performing his other job duties. In other words, the record includes no "objective evidence of material disadvantage" to Plaintiff as a result of being assigned the project. *Semsroth*, 555 F.3d at 1185. On this record, no reasonable factfinder could conclude that the challenged employment action was materially adverse. *Id.* The Court will grant Defendant summary judgment on Plaintiff's Title VII retaliation claim based on Mr. Nutter's assignment of the Vocera project to him because he has failed to show a genuine factual dispute regarding a required element of his prima facie case, *i.e.*, material adversity.[4]

### C.   Defendant is entitled to summary judgment on Plaintiff's Retaliation Claim Based on his 2019 Performance Evaluation Rating.

#### 1.   Material Facts

The following facts are undisputed except as otherwise noted. Mr. Nutter downgraded Plaintiff's annual performance evaluation ratings from "outstanding" to "excellent" beginning in

---

[4] However, contrary to its previously stated inclination, (Doc. 100 at 33), the Court declines to grant summary judgment on this claim on the additional grounds that Defendant has proffered a legitimate, nonretaliatory reason for assigning the Vocera project to Plaintiff, and a reasonable juror could not find the proffered reason pretextual. Though a defendant's burden to produce a legitimate, nonretaliatory reason for an employment action is "exceedingly light," it is not non-existent, and the proffered reason "must be reasonably specific and clear." *Gupta v. Okla. City Pub. Sch.*, 2022 WL 1742048, at *4 (10th Cir. May 31, 2022) (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)). Yet here, Defendant has proffered nothing more than a vague, general reason for Mr. Nutter's assignment of the Vocera project to Plaintiff, *i.e.*, that Mr. Nutter has "never factored in the race, age, or EEO participation of any of [his] employees" and "consider[s] only the needs of each individual project and [his] employees' skills and availability" when assigning projects. (Doc. 85-2 at 3.) Defendant has proffered no reason at all for why Mr. Nutter assigned Plaintiff the Vocera project in particular. (*See* Doc. 101 at 8.) As such, Defendant has not proffered a reasonably specific and clear reason for the challenged action.

2019. (Doc. 85-1 at 23-24; Doc. 90-4 at 2-9.) The parties dispute why he did so. Mr. Nutter attested that he downgraded Plaintiff's ratings "based only on [his] assessment of [Plaintiff's] work performance during the specific years at issue," including Plaintiff's "refusal to participate in an interview panel in 2019." (Doc 85-2 at 3.) And Plaintiff admits that he refused to participate in an interview panel in May 2019, testifying that he did so because he "didn't want to participate in something that was already predetermined." (Doc. 85-1 at 24.) Plaintiff also admits that on May 13, 2019, Mr. Nutter sent him an e-mail denying his request to be excluded from the panel, stating that his job duties included "HR Management functions" and "[p]erform[ing] administrative and human resources management functions for the unit[.]" (*Id.* at 24-25; Doc. 90-1 at 2.) Further, Plaintiff admits that in this e-mail Mr. Nutter warned him that if he "d[id choose] not to participate in the interview panel, or d[id] not fully participate in an exceptional manner, [his] end of year performance rating could be [a]ffected." (Doc. 85-1 at 24-25; Doc. 90-1 at 2.)

However, Plaintiff testified that this "wasn't the explanation [Mr. Nutter] gave [him] at the end of year. This never came up at the end of the year." (Doc. 85-1 at 25.) According to Plaintiff's testimony, he "can't recall whether or not [he and Mr. Nutter] actually met for 2019" and he does not know why Mr. Nutter downgraded his 2019 performance evaluation rating, but he believes it was because Mr. Nutter "was biased toward [him]" because of his race. (*Id.* at 24-25.)

Mr. Nutter signed Plaintiff's 2019 performance evaluation on December 18, 2019. (Doc. 90-4 at 9.) In it, he rated Plaintiff as "exceptional" in the elements of "HR/Workforce Management," "Workload Management," "Technical," "IT Security," and "Accountability," and as "fully successful" in the elements of "Supervisory Development & Technical Training" and "Customer Service." (*Id.* at 7.) Each of these elements included "[s]pecific [m]easure[s]" of achievement. (*Id.* at 2-5.) None of the elements included participation in interviews or compliance

with a supervisor's orders as a specific measure. (*Id.*) However, the element of HR/Workforce Management included the specific measure of "[p]articipat[ing] on Committees/Teams," and the element of Customer Service included the specific measures of "[c]ommunicat[ing] with OI&T … personnel in a courteous, cooperative and appropriate manner," "[p]romot[ing] a 'team' environment," and "maintain[ing] effective working relationships with … co-workers … and others who impact program activities." (*Id.* at 2, 4.)

## 2.   Analysis

An employer's burden to proffer a legitimate, nonretaliatory reason for an adverse employment action is one of production, not persuasion, and "involves no credibility assessment." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (brackets omitted); *Gupta v. Okla. City Pub. Sch.*, 2022 WL 1742048, at *4 (10th Cir. May 31, 2022). It is therefore "exceedingly light." *Anaeme*, 164 F.3d at 1279; *Gupta*, 2022 WL 1742048, at *4; *Duvall v. Putnam City Sch. Dist., Indep. Sch. Dist. No. 1 of Okla. Cnty.*, 530 F. App'x 804, 812 (10th Cir. 2013). Nevertheless, the proffered reason "must be reasonably specific and clear." *Gupta*, 2022 WL 1742048, at *4 (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992)).

For an employee to establish a genuine issue of material fact as to pretext, in turn, he must present cognizable evidence that his employer's proffered nonretaliatory reason is "unworthy of belief." *Pinkerton*, 563 F.3d at 1065; *Duvall*, 530 F. App'x at 812. An employee can meet this burden

> by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted [nonretaliatory] reasons.

*Pinkerton*, 563 F.3d at 1065 (quotation marks omitted); *Duvall*, 530 F. App'x at 812.

"[T]he relevant inquiry" in this context "is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Wise v. DeJoy*, 71 F.4th 744, 752 (10th Cir. 2023) (brackets omitted); *Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013); *see also Duvall*, 530 F. App'x at 812 ("[T]he pertinent question in determining pretext is not whether the employer was right ... but whether the employer's belief was genuine or pretextual.") (brackets omitted). "This is because Title VII licenses [courts] not to act as a super personnel department to undo bad employment decisions," but rather "to serve as a vital means for redressing retaliatory ones." *Gupta*, 2022 WL 1742048, at *5 (brackets omitted). Thus, "[i]n determining whether the proffered reason for a decision was pretextual, [courts] examine the facts as they appear to the person making the decision." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (emphasis omitted).

Here, Defendant has plainly satisfied his burden to produce a legitimate, nonretaliatory reason for Plaintiff's downgraded 2019 performance evaluation rating, *i.e.*, that Plaintiff refused to perform a job duty after his supervisor told him to do so. Indeed, it is undisputed that in May 2019, Mr. Nutter denied Plaintiff's request to be excused from participating in an interview panel and warned him in writing that failure to participate could affect his performance evaluation rating, but Plaintiff nevertheless refused to participate. This proffered reason is specific and clear, and Plaintiff's undisputed and willful insubordination would justify employment actions considerably more drastic than a one-step performance evaluation downgrade. *See, e.g.*, *Bird v. W. Valley City*, 832 F.3d 1188, 1201 (10th Cir. 2016) (holding that insubordination was legitimate proffered reason for terminating plaintiff's employment); *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012), *as amended on denial of reh'g* (June 28, 2012) (same).

Moreover, Plaintiff has failed to show a genuine factual dispute regarding whether the proffered reason for the downgrade was pretextual. In particular, notwithstanding his efforts to do so, Plaintiff has not succeeded in producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's proffered reason "that a reasonable factfinder could rationally find [the reason] unworthy of credence and hence infer that [his] employer did not act" on that basis. *Pinkerton*, 563 F.3d at 1065.

Plaintiff attacks Defendant's proffered reason on two grounds. First, Plaintiff testified that Mr. Nutter did not bring up his insubordination at the end of the year to justify the downgrade. (Doc. 85-1 at 25.) But it is undisputed that Mr. Nutter had already told Plaintiff in a May 2019 e-mail that such insubordination could affect his performance evaluation rating. And Plaintiff presents no argument as to why Mr. Nutter's failure to remind him during the evaluation process would tend to make the proffered reason unworthy of belief, particularly when he cannot even remember whether he and Mr. Nutter "actually met for 2019." (Doc. 85-1 at 24.)

Second, Plaintiff points to evidence that: (1) Mr. Nutter indicated in his May 2019 e-mail that participation in the interview panel was an "HR Management function[]"; yet, (2) he rated Plaintiff as "exceptional" in the element of HR/Workforce Management in his 2019 performance evaluation. (*Id.* at 1-2; *see* Doc. 90-1 at 2; Doc. 90-4 at 7.) But this evidence also fails to create a genuine issue of material fact as to pretext. Although Mr. Nutter could have chosen to downgrade Plaintiff in the element of HR/Workforce Management in response to Plaintiff's insubordinate refusal to participate in an interview panel, that was not his only plausible choice. For example, because willful insubordination impacts every aspect of job performance, another plausible choice would be to simply downgrade Plaintiff's overall rating due to his misconduct.

In addition, the specific elements in which Mr. Nutter actually did downgrade Plaintiff, *i.e.*, Supervisory Development & Technical Training and Customer Service, can plausibly be viewed as relevant to Plaintiff's misconduct. (Doc. 90-4 at 7.) Plaintiff's insubordinate refusal to participate in an interview panel can certainly be viewed as an impediment to his "[d]evelopment" as a "[s]upervisor[]," and it can also be viewed as undermining specific measures of achievement in the element of Customer Service, including communicating in a cooperative and appropriate manner, promoting a team environment, and maintaining effective working relationships. (*Id.* at 4, 7.) Thus, Mr. Nutter's decision to downgrade Plaintiff in these elements was a wholly credible response to Plaintiff's insubordination.

In sum, Plaintiff has failed to show that the substance of his 2019 annual performance evaluation is so inconsistent with Mr. Nutter's stated reason for downgrading Plaintiff's rating that a reasonable juror could find his stated reason unworthy of belief and thus infer that he did not act for that reason. *Pinkerton*, 563 F.3d at 1065. Nor has Plaintiff presented any other evidence to show that Mr. Nutter's stated reason for the downgrade was weak, implausible, inconsistent, incoherent, or contradictory. *Id.* Accordingly, Plaintiff has failed to show a genuine factual dispute regarding whether Defendant's proffered legitimate, nonretaliatory reason for downgrading his 2019 performance evaluation rating was pretextual, and Defendant is entitled to summary judgment on Plaintiff's Title VII retaliation claim based on this employment action.

### III.   *Muldrow* does not require the Court to modify its disposition of any of Plaintiff's disparate treatment claims.

The Court may, *sua sponte*, revise any of its orders "that adjudicate[] fewer than all the claims … at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *CareDx, Inc. v. Natera, Inc.*, 563 F. Supp. 3d 329, 332

n.1 (D. Del. 2021), *aff'd,* 40 F.4th 1371 (Fed. Cir. 2022); *Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 133–34 (E.D.N.Y. 2021), *aff'd,* 2023 WL 192671 (2d Cir. Jan. 17, 2023); *Mar-K Specialized Mfg., Inc. v. Bed Wood & Parts, LLC*, Civ. No. 20-450, 2022 WL 507498, at *2 (W.D. Okla. Feb. 18, 2022); *Beltran v. InterExchange, Inc.*, Civ. No. 14-3074, 2018 WL 1704633, at *2 (D. Colo. Apr. 9, 2018). Among other circumstances, *sua sponte* revision of an interlocutory order may be appropriate when there has been an intervening change in the controlling law. *Esposito*, 517 F. Supp. 3d at 134; *see also Goodstein v. Bombardier Cap., Inc.*, 167 F.R.D. 662, 667 (D. Vt. 1996) (revising prior interlocutory order *sua sponte* in light of intervening change in controlling law).

In its March Order, the Court granted Defendant summary judgment on all of Plaintiff's race and age discrimination claims under Title VII and the ADEA, including his claims based on disparate treatment. (Doc. 100 at 16-29.) A plaintiff proves disparate treatment discrimination by showing that his employer treated him less favorably than others because of a protected characteristic such as race or age. 29 U.S.C. § 623(a)(1); 42 U.S.C. § 2000e–2(a)(1); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). A plaintiff lacking direct evidence of such discrimination may prove it by using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp.*, 411 U.S. at 802–05; *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010). To prove disparate treatment under this framework, the plaintiff must first establish a prima facie case by showing that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015); *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

15

In its March Order, the Court cited two Tenth Circuit cases—*Daniels*, 701 F.3d at 620, and *Sanchez*, 164 F.3d at 527—for the proposition that, to rise to the level of an adverse employment action, "a challenged action must constitute a 'significant change in employment status.'" (Doc. 100 at 18.) The Court then relied on this proposition to hold that Plaintiff failed to show a genuine factual dispute as to whether the following employment actions were sufficiently adverse:  (1) "being criticized, demeaned, [and] humiliated"; (2) being "counseled about closing tickets"; (3) being excluded from "two specific meetings" and "[a] single e-mail chain"; and, (4) being denied funding to attend a training.  (*Id.* at 13, 19-20.)

In *Muldrow*, which came down after the Court issued its March Order, the Supreme Court abrogated *Daniels* and *Sanchez* on this point. *See* 144 S. Ct. at 973 n.1, 975. Specifically, the *Muldrow* Court held that, "[t]o make out a … discrimination claim, [an employee] must show some harm respecting an identifiable term or condition of employment," but need not show "that the harm incurred was 'significant.' Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."[5] *Id.* at 974 (citation omitted). Accordingly, the Court has reviewed the portions of its March Order finding the above-listed employment actions to be insufficiently adverse under *Daniels* and *Sanchez*. Ultimately, however, the Court concludes that *Muldrow* does not require it to change its disposition of Plaintiff's disparate treatment claims based on these actions.

---

[5] However, the *Muldrow* Court specifically distinguished adverse employment action in the context of disparate treatment claims from materially adverse employment action in the context of retaliation claims, leaving the standards for assessing the latter intact. 144 S. Ct. at 976. Thus, the decision does not impact the Court's analysis of Plaintiff's Title VII retaliation claims. (*See* Doc. 100 at 30-33; *see also* Section II, *supra.*) Similarly, the *Muldrow* Court did not address hostile work environment claims, and thus the decision does not affect the Court's analysis, in its March Order, of Plaintiff's hostile work environment claims under Title VII and the ADEA. *See generally* 144 S. Ct. at 967; (Doc. 100 at 23-29.)

A.      *Being Criticized, Demeaned, and Humiliated*

In his SAC, Plaintiff asserted disparate treatment claims under Title VII and the ADEA on the basis that Mr. Nutter criticized, demeaned, and humiliated him, and the Court granted summary judgment on these claims for failure to show a genuine issue of material fact as to whether the challenged conduct amounted to adverse employment action. (Doc. 45 at 3-6; Doc. 100 at 19; *see* Doc. 100 at 5-6 (describing record evidence relevant to these claims).) Notwithstanding *Muldrow*'s impact on the Court's prior reasoning, these disparate treatment claims still cannot survive summary judgment.

*Muldrow* clearly states that an employment action not only must cause "some harm," but also must affect "an identifiable *term or condition* of employment." *Id.* at 974 (emphasis added). And the Supreme Court has previously held that "discriminatory intimidation, ridicule, and insult" violates federal anti-discrimination statutes only when it is "sufficiently severe or pervasive to alter *the conditions* of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added) (quotation marks and citations omitted). The Court recognizes that *Harris* addressed whether discriminatory intimidation, ridicule, and insult create a hostile work environment, rather than whether such conduct amounts to an adverse employment action for purposes of a disparate treatment claim. *See generally* 510 U.S. at 17. But under *Muldrow*, the pertinent question in both contexts is whether such conduct affects a term or condition of the plaintiff's employment, and under *Harris*, such conduct must be "sufficiently severe or pervasive" in order to do so. *Muldrow*, 144 S. Ct. at 974; *Harris*, 510 U.S. at 21.

Here, even if the Court were to infer that Mr. Nutter acted with age-based discriminatory animus in commenting that Plaintiff should "retire so they could be happy," (Doc. 85-1 at 22; Doc.

17

100 at 5), as a matter of law this alleged comment constitutes "a mere offensive utterance" rather than intimidation, ridicule, or insult so severe or pervasive that it altered the conditions of Plaintiff's employment. *Harris*, 510 U.S. at 21, 23. As such, it cannot form the basis of a valid disparate treatment claim under Title VII or the ADEA.

Likewise, Mr. Nutter's alleged differential treatment in counseling Plaintiff but not Mr. Martinez about the "Canteen" project, (*see* Doc. 100 at 9-10), is so mild and isolated, a reasonable juror could not conclude that it altered the conditions of Plaintiff's employment, particularly when "viewed in the context of Mr. Nutter's years-long supervision of Plaintiff." (*Id.* at 29.) Rather, at most, this conduct involves "run-of-the-mill … annoying behavior" and "[n]ormal job stress" arising out of a "[p]ersonality conflict[]."*Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012); *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998). Thus, as a matter of law, it cannot constitute actionable disparate treatment under Title VII or the ADEA.

As for the remainder of the allegedly critical, demeaning, and humiliating conduct on which Plaintiff bases his disparate treatment claims, the Court has already held that Plaintiff failed to present any evidence beyond his own belief to show that Mr. Nutter's conduct was motivated by Plaintiff's race or age. (Doc. 100 at 27-29.) Even if the Court were to assume that this conduct amounted to adverse employment action under *Muldrow*, which is by no means clear, Plaintiff's prima facie case based on this conduct would still fail because he has not shown a genuine factual dispute regarding whether it occurred under circumstances giving rise to an inference of discrimination. *Bennett*, 792 F.3d at 1266; *Luster*, 667 F.3d at 1095.

B.      *Being Counseled About Closing Tickets*

In his SAC, Plaintiff also asserted disparate treatment claims based on Mr. Nutter's alleged differential treatment in requiring Plaintiff but not Mr. Martinez to close tickets on one

occasion, and the Court granted summary judgment on these claims for failure to show a genuine issue of material fact regarding whether the challenged conduct amounted to adverse employment action. (Doc. 45 at 4-6; Doc. 100 at 19; *see* Doc. 100 at 12-13 (describing record evidence relevant to these claims).) But again, notwithstanding *Muldrow*, these disparate treatment claims cannot survive summary judgment, because the challenged conduct is so mild and isolated, a reasonable juror could not conclude that it altered the conditions of Plaintiff's employment. *Harris*, 510 U.S. at 21. Rather, at most, this conduct involves run-of-the-mill annoying behavior and normal job stress arising out of a personality conflict and cannot constitute actionable disparate treatment under Title VII or the ADEA. *Morris*, 666 F.3d at 664; *Trujillo*, 157 F.3d at 1214.

     C.    *Being Excluded from Two Meetings and an E-Mail Chain*

     Plaintiff also asserted disparate treatment claims based on Mr. Nutter's excluding him from two meetings and an e-mail chain, and the Court granted summary judgment on these claims for failure to show a genuine issue of material fact regarding whether the challenged conduct rose to the level of adverse employment action. (Doc. 45 at 4-6; Doc. 100 at 19-20; *see* Doc. 100 at 10-11 (describing record evidence relevant to these claims).) But again, notwithstanding *Muldrow*'s impact on the Court's prior reasoning, these claims still cannot survive summary judgment.

     First, Plaintiff's disparate treatment claims based on Mr. Nutter's alleged exclusion of Plaintiff but not Mr. Martinez from two meetings are based on conduct so mild and sparse, a reasonable juror could not conclude that it altered an "identifiable term or condition" of Plaintiff's employment, particularly viewed in the context of Mr. Nutter's lengthy supervision of Plaintiff. *Muldrow*, 144 S. Ct. at 974; *see also Harris*, 510 U.S. at 21. As such, even under *Muldrow*, the challenged conduct falls short of adverse employment action as a matter of law.

Further, as to Plaintiff's disparate treatment claims based on being left off of a single e-mail chain, not only has Plaintiff failed to show a genuine factual dispute regarding whether the challenged conduct altered an identifiable term or condition of his employment and thus amounted to adverse employment action, *Muldrow*, 144 S. Ct. at 974, but also he has not presented any evidence to show that Mr. Martinez or another similarly situated employee was included in this e-mail chain, nor has he presented any other evidence tending to show discriminatory animus. (*See* Doc. 100 at 11 (describing record evidence relevant to this issue).) Thus, Plaintiff's prima facie case based on this conduct also fails because he has not shown a genuine factual dispute regarding whether it occurred under circumstances giving rise to an inference of discrimination. *Bennett*, 792 F.3d at 1266; *Luster*, 667 F.3d at 1095.

> D.    *Being Denied Funding to Attend a Training*

Finally, in his SAC, Plaintiff asserted disparate treatment claims based on Mr. Nutter's alleged denial of funding for Plaintiff to attend a particular training, and the Court granted summary judgment on these claims for failure to show a genuine factual dispute as to whether the challenged conduct amounted to adverse employment action. (Doc. 45 at 4-6; Doc. 100 at 20; *see* Doc. 100 at 13 (describing record evidence relevant to these claims).) As to these claims, the Court reiterates its prior observation that "there is no evidence to show that Plaintiff suffered any consequences at all due to missing the training at issue." (Doc. 100 at 20.) In other words, there is no evidence that Plaintiff suffered *any* harm from missing this training, much less "some harm respecting an identifiable term or condition of employment." *Muldrow*, 144 S. Ct. at 974. Thus, again, *Muldrow* changed the standard for assessing whether Mr. Nutter's challenged action constituted an adverse employment action, but it does not change the Court's conclusion that Plaintiff has failed to show a genuine factual dispute on this point.

For all of these reasons, although the *Muldrow* decision has required the Court to modify its reasoning as to the above-listed disparate treatment claims, it does not require the Court to modify its disposition of any of these claims.

## IV.   <u>Conclusion</u>

For the reasons stated herein, summary judgment in Defendant's favor is GRANTED on the remaining claims asserted in Plaintiff's Second Amended Complaint for Employment Discrimination on the Bas[e]s of Race, Color, Age and Retaliation (Doc. 45), *i.e.*, Plaintiff's Title VII retaliation claims based on Mr. Nutter's alleged actions in December 2019. (Doc. 100 at 33.) In addition, though *Muldrow* impacts the reasoning in the Court's March Order as explained herein, it does not require the Court to change its ruling granting Defendant summary judgment on all of Plaintiff's disparate treatment race and age discrimination claims under Title VII and the ADEA. (*Id.*)

IT IS SO ORDERED.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent